IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs November 17, 2020

## STATE OF TENNESSEE v. SERGIO LARA, IN RE: DEBO'S BAIL BOND COMPANY, LLC

**Appeal from the Circuit Court for Rutherford County**
**No. F-81098    Barry R. Tidwell, Judge**

_____

**No. M2020-00263-CCA-R3-CO**

_____

This is an appeal by Debo's Bail Bond Company, LLC, ("Debo's") of an order issued by the Circuit Court for Rutherford County denying Debo's Petition for Relief from Bond. The sole issue on appeal is whether the trial court erred in its application of Tennessee Code Annotated section 40-11-201(c) because the State declined to commence extradition proceedings. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Anthony J. Cain, Murfreesboro, Tennessee, for the appellant, Debo's Bail Bond Company, LLC.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Jennings H. Jones, District Attorney General; and John Zimmermann, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The Defendant, Sergio Lara, was arrested on November 10, 2018, and charged with domestic assault, a Class A misdemeanor. Debo's, the Appellant, posted a bond of $9,000 on November 12, 2018, as the Defendant's surety. Following a preliminary hearing on January 22, 2019, the case was bound over to the Rutherford County grand jury. On April

2, 2019, the grand jury returned an indictment charging the Defendant with one count of domestic assault, a Class A misdemeanor. On April 29, 2019, the Defendant failed to appear at his arraignment hearing. On April 30, 2019, the circuit court entered an order of conditional forfeiture and executed a writ of *scire facias* on the Appellant triggering a 180-day period for the Appellant to "show cause, if any, why this judgment should not be made final." See Tenn. Code Ann. § 40-11-139(b).

On July 17, 2019, the Appellant filed a Petition for Release from Bond. In the petition, Debo's explained that the Defendant was currently residing in Chicago, Illinois. The Appellant went to Chicago to contact the Defendant, but he was "unwilling to surrender himself." The petition further explained that "it is a [f]elony crime for a bounty hunter or bail bondsman to apprehend a fugitive in Chicago, and local law enforcement in Chicago informed the Appellant that they could only apprehend the Defendant if "if there was a hold placed in the [National Crime Information Center] system." The petition also stated that the District Attorney General's Office for the Sixteenth Judicial District had "refused to extradite persons charged with misdemeanor crimes in an effort to save money." The petition included a memorandum from the attorney general's office stating such.

On November 21, 2019, the Appellant filed a Motion for Extension. In the motion, the Appellant stated that it had received information that the Defendant was going to travel back to Tennessee from Chicago "during the upcoming holiday season to visit friends in the Middle Tennessee area." The Appellant requested a sixty-day extension to give it the opportunity to "apprehend the Defendant if he returns to Tennessee during the upcoming holiday season." The motion was granted on November 22, 2019.

The Appellant's Petition for Release from Bond was finally heard by the circuit court on January 31, 2020. At the hearing, Allen Debowsky, the owner of Debo's, explained that he had traveled to Chicago in May 2019 after learning that the Defendant was residing there with his mother. He further explained that it was a "felony to bounty hunt" in Illinois and "if you take [the Defendant], it's kidnapping." Mr. Debowsky then asked the district attorney's office to "get him put in NCIC and get an extradition warrant." However, the district attorney's office told Mr. Debowsky that it "was not in the best interest of the county" to have the Defendant extradited. In October 2019, Mr. Debowsky spoke with the co-signor of the bond. Mr. Debowsky returned to Chicago, and the co-signor took him to the Defendant's residence. Mr. Debowsky and a local Chicago policeman "attempted to explain to the Defendant that he needed to return to Tennessee to take care of the criminal charge," and Mr. Debowsky offered to pay for his travel expenses. The Defendant refused to come out of the residence and told them "as long as he doesn't ever come back to Tennessee[,] he wasn't worried about [his criminal charge]." Mr.

Debowsky also affirmed that the Defendant did not return to Tennessee for the 2019 holiday season as he expected.

The Appellant's counsel argued that because the district attorney's office refused to extradite the Defendant, the Appellant should have been "released from the bond if he made that request" under Tennessee Code Annotated section 40-11-201(c). The Appellant's counsel elaborated, "I submit to the Court that the Legislature meant any type - - any time the bondsman requests a detainer of any type, that he should be released from the bond if he made the request. And the D.A.'s office refused[.]" The Appellant's counsel affirmed that the Defendant had never been incarcerated. The trial court denied the Appellant's Petition for Release from Bond and entered a final forfeiture on January 31, 2020. This timely appeal followed.

## ANALYSIS

A bail bond is "a contract between the government on one side and the criminal defendant and his surety on the other, whereby the surety assumes custody of the defendant and guarantees to the State either the appearance of the defendant in court or the payment of the full amount of bail set by the court." In re Sanford & Sons Bail Bonds, Inc., 96 S.W.3d 199, 202 (Tenn. Crim. App. 2002) (citations omitted). Because the risk of a defendant's flight is inherent in every bail bond agreement, it is incumbent upon the bondsman to be "thorough . . . in assessing the risk of flight before writing the bond, [and] in keeping tabs on the defendant after the bond is written." Id. (quoting Holly J. Joiner, Note, Private Police: Defending the Power of Professional Bail Bondsmen, 32 Ind. L. Rev. 1413, 1422 (1999)). "The bondsman only makes a profit when he is able to collect fees from the defendant and avoid paying the amount of the bond to the court." Id. (quoting Joiner, supra).

The forfeiture of bail bonds is controlled by statute. See Tenn. Code Ann. § 40-11-201 et seq. The statute is permissive and confers no rights upon the sureties. State v. Shredeh, 909 S.W.2d 833, 835-36 (Tenn. Crim. App. 1995) (citing Diehl v. Knight, 12 S.W.2d 717 (Tenn. 1929)). When a defendant fails to appear in court in accordance with a bail bond agreement, Tennessee Code Annotated section 40-11-201(a) provides that a trial court may enter a conditional judgment of forfeiture against the defendant and his sureties. Upon entry of a judgment of conditional forfeiture, the trial court must issue a writ of scire facias requiring the defendant and his sureties to show cause why the judgment should not become final. Tenn. Code Ann. § 40-11-202. A surety has 180 days from the date the scire facias is served to produce the defendant; otherwise, "the court may enter [final] judgment." Tenn. Code Ann. § 40-11-139(b).

Tennessee Code Annotated section 40-11-201(c) provides, in relevant part, that "the appearance or bail bond shall remain in full force and effect until the principal is physically or mentally able to appear, <u>or until a detainer against the principal is filed with the detaining authority</u>." Tenn. Code Ann. § 40-11-201(c) (emphasis added). Further,

> The appearance or bail bond shall remain in full force and effect until the principal is physically or mentally able to appear, or until a detainer against the principal is filed with the detaining authority. On the filing of a detainer, the bondsman and sureties shall remain liable for the expenses of returning the principal to this jurisdiction for trial when the principal is released by the detaining authority. If the detainer request is refused or if the detaining authority releases the principal notwithstanding the filing of the detainer, the surety shall not be liable in the undertaking. It shall be the duty of the bondsman or surety to present to the presiding court, in a timely manner, all appropriate documentation evidencing that the detainer was properly filed or refused, or that the detaining authority released the principal notwithstanding the filing of the detainer. The liability of any bondsman or surety shall not exceed the amount of the bail bond. After trial, however, if it is necessary to return the principal to the detaining authority in another jurisdiction, all expenses incurred in the return shall be paid by the state of Tennessee. As used in this subsection (c), "detainer" includes any means of requesting a defendant be returned to this jurisdiction, including, but not limited to, a detainer, habeas corpus, or extradition.

Tenn. Code Ann. § 40-11-201(c). "A detainer is simply a notice filed with the prisoner's institution reflecting that the prisoner is wanted to face charges elsewhere with the institution being requested to hold the prisoner for the filing agency or to notify the agency before the prisoner's release." <u>State v. Lock</u>, 839 S.W.2d 436, 443 (Tenn. Crim. App. 1992); <u>see also</u> <u>State v. Henretta</u>, 325 S.W.3d 112, 135 (Tenn. 2010) (quoting <u>United States v. Mauro</u>, 436 U.S. 358 (1978)). Extradition is "is the process by which a person who is not in custody may be lawfully arrested and returned to another state or jurisdiction for offenses committed in that state. Extraditions between states are covered by the Uniform Criminal Extradition Act, Tennessee Code Annotated sections 40-9-101 to -130." <u>State v. Abdirizak Omar Yussuf</u>, No. M2008-01161-CCA-R3-CD, 2009 WL 3672823, at *9 (Tenn. Crim. App. Nov. 5, 2009), <u>perm. app. denied</u> (Tenn. Apr. 23, 2010).

The surety may petition the trial court for relief from forfeiture. <u>In re Paul's Bonding Co., Inc.</u>, 62 S.W.3d 187, 193 (Tenn. Crim. App. 2001); Tenn. Code Ann. § 40-11-204(a). The trial court must grant the surety a hearing, and "[t]he surety carries the burden of proving that its petition for exoneration should be granted." <u>In re Sanford & Sons Bail Bonds, Inc.</u>, 96 S.W.3d at 204. A surety may be exonerated from forfeiture by

its surrender of the defendant to the court at any time before payment of the judgment of forfeiture. Tenn. Code Ann. § 40-11-203. Otherwise, the surety must seek relief pursuant to Tennessee Code Annotated section 40-11-204, which provides:

> the judges of the general sessions, circuit, criminal and supreme courts may receive, hear and determine the petition of any person who claims relief is merited on any recognizances forfeited, and so lessen or absolutely remit the same, less a clerk's commission . . ., and do all and everything therein as they shall deem just and right, and consistent with the welfare of the state, as well as the person praying for relief. This power shall extend to the relief of those against whom final judgment has been entered whether or not the judgment has been paid, as well as to the relief of those against whom proceedings are in progress.

Tenn. Code Ann. § 40-11-204(a); see State v. William Bret Robinson, No. E1999-00950-CCA-R3- CD, 2000 WL 1211316, at *2 (Tenn. Crim. App. Aug. 28, 2000) (noting that "[i]n the enforcement of forfeiture and for the exoneration of bail, the statute makes no distinction between a recognizance and a bail bond" (citing State v. Gann, 51 S.W.2d 490, 490 (Tenn. 1932)), no perm. app. filed. Our supreme court has stated that Tennessee Code Annotated section 40-11-204(a) "provides trial courts with discretion to relieve a surety from forfeiture[,]" but trial courts "must exercise this discretion consistently with other statutory provisions[.]" In Re: Rader Bonding Company, 592 S.W.3d 852, 858 (Tenn. 2019).

The "trial court's discretion under Tenn[essee] Code Ann[otated section] 40-11-204 is broad and comprehensive, empowering trial courts to make determinations in accordance with [their] conception of justice and right." In re Paul's Bonding Co., Inc., 62 S.W.3d at 194 (internal quotations and citations omitted). Accordingly, we review a trial court's determination on a petition for exoneration for an abuse of discretion. Id. "Under an abuse-of-discretion standard, this [C]ourt grants the trial court the benefit of its decision unless the trial court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." Id. (quoting State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997)).

On appeal, the Appellant asserts that it is "entitled to exoneration from the Defendant's bond under Tennessee Code Annotated section 40-11-201(c)" because of the district attorney's declining to extradite the Defendant from Chicago for budgetary reasons. The State responds that "the State's policy not to pursue extradition after a defendant has fled the jurisdiction does not excuse the surety from its obligations under the bond agreement." We agree with the State.

In the instant case, the record reflects that the Defendant voluntarily fled to his mother's house in Chicago, Illinois, where it is illegal to bounty hunt. Because the Defendant was not in custody in Chicago, the Appellant asked the district attorney's office for an extradition order, which would have led to Chicago authorities detaining the Defendant on a fugitive warrant. However, the district attorney's office refused, citing a general policy of not extraditing misdemeanor offenders for budgetary reasons.

It is clear from the record that the trial court did not abuse its discretion in denying the Appellant's Petition for Release from Bond and entering a final forfeiture. As noted by the State, this court has previously concluded that the State's refusing to extradite a defendant after he voluntarily flees the jurisdiction does not release the surety's obligation under the bond agreement. See Yussuf, 2009 WL 3672823, at *7 ("Under Defendant's theory that a surety is absolved of responsibility if the State decides not to pursue extradition of a missing defendant, a bonding company's obligations would be greatly reduced."). Further, the Appellant was presumably aware that the Defendant's mother resides in Chicago, a place where the Appellant could not apprehend him without State intervention. As we have laid out, a bondsman must evaluate the inherent risk of flight before writing the bond and be diligent "in keeping tabs on the defendant after the bond is written." In re Sandford & Sons Bail Company, Inc., 96 S.W.3d at 202.

We also note that nothing in the language of Tennessee Code Annotated section 40-11-201(c) mandates that the State extradite defendants at the request of bondsmen, and the statute contemplates the excusal of the surety's obligation if the *detaining authority* refuses extradition, not the State. The plain language of the statute indicates that the detaining authority would have to refuse the detainer request in order for the surety not to be held responsible. Specifically, the statute instructs that a "detainer is filed with the detaining authority." Therefore, the detaining authority would have to be the party who declined the detainer, as it is the party that the detainer must be filed with. Here, the State of Tennessee was not the detaining authority and therefore could not refuse the detainer for purposes of section 40-11-201(c). Nothing in the record suggests that the trial court abused its discretion in refusing to excuse Debo's obligations. The Appellant is not entitled to relief.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE